UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AMPION CORP.,

      Plaintiff,

  v.                                               18-CV-660
                                                     DECISION AND ORDER

AXXA TECH, INC.,

      Defendant.

---

On June 8, 2018, the plaintiff, Ampion Corp. ("Ampion"), filed a complaint alleging trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114; unfair competition and false designation of origin under § 43 of the Lanham Act, 15 U.S.C. § 1125; and trademark infringement under federal common law. Docket Item 1. The defendant failed to appear and defend this action, and the time to do so expired. As a result, the plaintiff asked the Clerk of Court to enter a default, Docket Item 7, which the Clerk entered accordingly on August 13, 2018, Docket Item 8. Now before this Court is the plaintiff's motion for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. After reviewing the plaintiff's supporting papers and the applicable law, this Court GRANTS the plaintiff's motion.

## **BACKGROUND**

The complaint tells the following story.[1] Ampion is a Michigan corporation that provides electronic repair and maintenance services throughout the United States.

---

[1] On a motion for default judgment, the factual allegations in the complaint are accepted as true. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

Docket Item 1 at 2-3. Ampion has provided its services since 1993 using an unregistered mark, "Ampion." *Id* at 3. In 2012, Ampion registered a similar mark, "AMPION CORP," and its design, in International Class 37 as U.S. Trademark Registration No. 4096054 (the "'054 Registration") (collectively, the unregistered and registered trademarks are the "Ampion Marks."). *Id.* Ampion remains the owner of the '054 Registration. *Id.* Ampion displays the Ampion Marks in interstate commerce in connection with its services. *Id.* The Ampion Marks have become widely known as identifying Ampion's services. *Id.*

Beginning sometime after Ampion acquired protectable exclusive rights in the Ampion Marks, the defendant, AXXA Tech, Inc. ("AXXA"), began using a mark that is virtually identical to the Ampion Marks without Ampion's permission. *Id.* On November 21, 2016, Ampion sent AXXA a cease-and-desist letter demanding that AXXA stop doing business under the name "Ampion," remove the phrase "Ampion" from its website, and change its name with the New York Department of State. Docket Item 1-3 at 2. After a month went by without any reply, Ampion sent AXXA another letter. Docket Item 1-4 at 2. A few weeks later, AXXA finally replied, saying that it would "address and mitigate [Ampion's] concerns." Docket Item 1-5 at 2. But AXXA changed only one letter: from "Ampion" to "Ampeon." Docket Item 1 at 4-5.

Both Ampion and AXXA provide industrial electronic repair services to consumers. *Id.* at 5-6. In fact, AXXA provides services similar to those offered by Ampion, and the infringing mark is likely to cause confusion between the services

offered by the two companies. *Id.* at 6. For that reason and others, AXXA's infringing marks and acts are likely to cause damage to Ampion and its reputation. *Id.* at 7-8.

Ampion therefore brought this suit seeking declaratory relief that AXXA is illegally infringing its trademark, an injunction preventing further infringement, treble damages, attorney's fees, and costs. *Id.* at 11-13.

## DISCUSSION

**I.  DEFAULT JUDGMENT**

To obtain default judgment, a party must secure a clerk's entry of default by demonstrating, "by affidavit or otherwise," that the opposing party "has failed to plead or otherwise defend" the case. Fed. R. Civ. P. 55(a). The clerk's entry of default does not mean that a default judgment is automatically warranted. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). But it does mean that the court accepts as true the complaint's factual allegations—except those relating to damages—and draws all reasonable inferences in the moving party's favor. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

"[T]he court may, on [the] plaintiff['s] motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers*, 779 F.3d at 187. As to injunctive relief, "[a] court may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute, and (2) it meets the prerequisites for the issuance of an injunction." *CommScope, Inc. of North Carolina v. Commscope (U.S.A.) Intern. Group Co., Ltd.*, 809 F. Supp. 2d 33, 41

3

(N.D.N.Y. 2011) (quoting *Pitbull Prods., Inc. v. Univ. Netmedia, Inc.*, 2007 WL 3287368, at *5 (S.D.N.Y. Nov 7, 2007)); *see also Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 272 (2d Cir. 2011). To satisfy the second condition, a party seeking an injunction must demonstrate "irreparable harm and the absence of an adequate remedy at law." *CommScope, Inc.*, 809 F. Supp. 2d at 41 (quoting *Kingvision Pay-Per-View Ltd. v. Laleo*, 429 F. Supp. 2d 506, 516 (E.D.N.Y. 2006)); *see also Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57 (1975). As to damages, the court should take steps, including by hearing or referral when necessary, to establish their proper amount with reasonable certainty. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).

## II. LIABILITY

### A. Federal Trademark Infringement and Unfair Competition Claims

Ampion asserts that AXXA's use of an infringing mark constitutes trademark infringement under 15 U.S.C. § 1114 and is likely to cause consumer confusion, mistake, or deception. Docket Item 1 at 7. Ampion further alleges that AXXA has engaged in unfair competition and false designation of origin under 15 U.S.C. § 1125(a). *Id.* at 8-9. To succeed on these claims, the plaintiff "must show that it has a valid mark that is entitled to protection under the Lanham Act and that [the defendant's] actions are likely to cause confusion with [the plaintiff's] mark." *The Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 960 (2d Cir. 1996); *see also Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 129 (2d Cir. 2004) (analyzing plaintiff's claims of imitation of registered mark, 15 U.S.C. § 1114, and false designation of origin, *id.* § 1125(a), under the same legal standard).

Ampion has alleged facts that satisfy both prongs of the Lanham Act. First, Ampion has shown that the Ampion Marks are "protectable trademark[s]," and that it has developed substantial goodwill around them. Docket Item 9-1 at 9-10. A mark is entitled to protection under the Lanham Act if it is "validly registered or otherwise meets the criteria for protection as an unregistered trademark." *Lyons P'ship, L.P. v. D & I Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 113 (E.D.N.Y. 2010). Ampion's marks are one or the other.

The criteria for protection as an unregistered mark are the same as the "general principles qualifying a mark for registration" under 15 U.S.C. § 1052. *Two Pesos Inc. v. Taco Cabana, Inc.*, 505 U.S 763, 768 (1992). Generally, a mark is protectable unless it "[c]onsists of or comprises immoral, deceptive, or scandalous matter"; so resembles a mark already registered as to be confusing; or is misdecriptive, among other more specific prohibitions. 15 U.S.C. § 1052. Ampion's unregistered mark, "Ampion," is not prohibited under those criteria and therefore is protected. *Id.* As for Ampion's registered mark, registration is "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark."[2] 15 U.S.C. § 1115(a); Docket Item 9-1 at 9-10.

---

[2] Ampion alleges that its '054 Registration is an "incontestable" trademark under 15 U.S.C. § 1065 because it has been in use for more than five years from the date of registration. Docket Item 9-1 at 9 n.2; Docket Item 1 at 2. But continuous use for five years is only one of the criteria § 1065 requires for a mark to become incontestable. Moreover, § 1065 requires an affidavit to be "filed with the [United States Patent and Trademark Office] Director within one year after the expiration of any such five-year period." 15 U.S.C. § 1065. Because Ampion has not provided such an affidavit, the Court cannot presume the mark is incontestable.

Furthermore, because of Ampion's "long-term promotional and marketing efforts and the quality of [its] services," the Ampion Marks have become a "symbol of [Ampion's] goodwill." Docket Item 1 at 3. And "customers…associate and identify the Ampion [Marks] exclusively with Ampion." *Id.* All these allegations establish that the Ampion Marks are entitled to protection because the marks are "capable of distinguishing the applicant's goods from those of others." *Two Pesos, Inc.*, 505 U.S. at 768.

Second, Ampion has shown the likelihood of confusion. To determine whether a mark is likely to cause confusion among consumers, courts generally rely upon the eight-factor test first applied in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). These factors include (1) the strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the competitive proximity of the products or services; (4) the existence of actual confusion; (5) the likelihood that the plaintiff will "bridge the gap" between the two markets; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the purchasers. *Id.*

The Ampion Marks are strong. The '054 Registration, Ampion's registered mark, is presumed to be strong. *See The Sport Authority, Inc.*, 89 F.3d at 960. Its unregistered mark, too, is strong because it is inherently distinctive. *See Connecticut Community Bank v. Bank of Greenwich*, 578 F. Supp. 2d 405, 417 (D. Conn. 2008)

---

Still, a registered trademark is "prima facie" evidence of "the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark" even if it is not incontestable. 15 U.S.C. § 1115(a). Moreover, in light of the defendant's default, it presumably has not commenced a proceeding to challenge the trademark.

("Inherent distinctiveness is synonymous with the degree of protection a mark is entitled to based on its classification as generic, descriptive, suggestive, or arbitrary or fanciful."). As Ampion persuasively argues in its brief, Docket Item 9-1 at 11, the term Ampion is unrelated to its business, and as an arbitrary mark it is inherently strong.

The marks are also substantially similar. The difference of a single vowel—"Ampion" vs. "Ampeon"—is a "minor typographical difference between the marks" that "will not preclude a finding of similarity." *North Am. Graphics, Inc. v. North Am. Graphics of U.S., Inc.*, 1997 WL 316599, at *6 (S.D.N.Y. 1997); *see also W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir. 1993) (pointing out the need to consider "the general impression created by the marks, keeping in mind all factors which the buying public will likely perceive and remember"), *superseded on other grounds by Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39 (2d Cir. 1994). And because neither mark is a word with a correct spelling, the two are virtually identical and likely to cause confusion.

Moreover, Ampion and AXXA are in direct competition with one another because they provide similar goods and services in the industrial market. *Compare* Docket Item 1 at 3 *with* Docket Item 1 at 5-6. Indeed, Ampion claims that AXXA adopted its mark with actual knowledge of "Ampion's superior rights in the [mark]." Docket Item 1 at 6. Ampion has submitted an affidavit detailing an instance of actual confusion in the marketplace. *See* Docket Item 9-2. And based on all those allegations, it is no stretch to infer that AXXA did not act in good faith in adopting its mark.

For all these reasons, Ampion has shown a likelihood of confusion between the parties' business names and marks.[3] *See Polaroid Corp.*, 287 F.2d at 495. Therefore, taking the undisputed facts in the complaint as true, Ampion has met both prongs of the Lanham Act and has plausibly established AXXA's liability.

### B. Common Law Trademark Infringement

Ampion also claims that AXXA is liable under federal common law. Docket Item 1 at 2. There is no federal common law of trademark infringement. *Int'l Order of Job's Daughters v. Lindeburg and Co.,* 633 F.2d 912, 915 (9th Cir. 1980) ("Save as an outgrowth of federal statutory or constitutional law, there is no federal common law."). In its brief, Ampion includes a footnote asserting that common law claims are analyzed under the same standard as the Lanham Act. Docket Item 9-1 at 9 n.1. But the authority Ampion cites are state common law, not federal, claims. *See Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61 n.8 (1992) ("The test for trademark infringement under both the Lanham Act and the [New York] common law is the likelihood that the public will be confused about the source of the product."); *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 302 (quoting *Allied Interstate LLC v. Kimmel & Silverman P.C.,* 2013 WL 4245987 (S.D.N.Y. Aug. 12, 2013) ("'[I]t is well-established that the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims.'").

In any event, Ampion has alleged facts sufficient to establish AXXA's liability under the Lanham Act, and a common law claim would not add much, if anything. *See*

---

[3] The remaining *Polaroid* factors are either neutral or would require discovery to evaluate.

*Int'l Order of Job's Daughters,* 633 F.2d at 916 ("Confusion as to the source of the substantive law is understandable because federal and state laws regarding trademark and related claims of unfair competition are substantially congruent, . . . [t]herefore the choice of federal or state law frequently has no impact on the outcome.").

For all those reasons, pursuant to Federal Rule of Civil Procedure 55(b), the Court GRANTS the plaintiff's motion for default judgment under the Lanham Act on the issue of liability with regard to the above-referenced claims.

### III. REQUESTED RELIEF

Ampion seeks both legal and equitable relief. It asks the Court to permanently enjoin AXXA from any further acts of trademark infringement. Docket Item 1 at 11. It asks the Court to order AXXA to file a report detailing how it has complied with the injunction; to file an accounting of all sales and profits realized by using the Ampion Marks; to destroy all infringing materials; and to permit Ampion or its auditors to inspect AXXA's books and premises for a period of six months. *Id.* at 12-13. Finally, it seeks an award of damages sustained as a result of AXXA's infringement; treble damages or wrongful profits trebled; attorney's fees and costs; and interest, including pre-judgment interest, on the foregoing sums. *Id.* at 13.

#### 1. Injunctive Relief

"A Court may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute, and (2) it meets the prerequisites for the issuance of an injunction." *CommScope, Inc.*, 809 F. Supp. 2d at 41 (quoting *Pitbull Prods., Inc. v. Univ. Netmedia, Inc.*, 2007 WL 3287368, at *5 (S.D.N.Y. Nov. 7, 2007)).

The Lanham Act entitles Ampion to the injunctive relief that it requests. The act vests courts with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a). A court therefore has the power to enjoin a defendant from engaging in further acts of trademark infringement and unfair competition and to direct the destruction of all infringing materials. *See, e.g.*, *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 151 (E.D.N.Y. 2010) (directing the defendants to "destroy or to surrender to Plaintiff any and all materials . . . wherein . . . Rolls-Royce Marks may appear."). Moreover, the act explicitly provides that "[a]ny such injunction may include a provision directing the defendant to file . . . a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction." 15 U.S.C. § 1116(a).

Before Ampion can actually obtain such relief, however, it must meet the prerequisites for an injunction—that is, it must demonstrate irreparable harm and the absence of an adequate remedy at law. *See Patsy's Italian Rest., Inc.*, 658 F.3d at 272.

"In trademark disputes, a showing of likelihood of confusion establishes . . . irreparable harm." *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) (internal quotation marks omitted). As discussed above, accepting the allegations in the complaint as true, the Court finds that Ampion "has alleged likelihood of confusion and thus also established irreparable injury." *CommScope, Inc.*, 809 F. Supp. 2d at 41 (citing *Pitbull Prods., Inc.*, 2007 WL 3287368, at *6).

Ampion also has established that it has no adequate remedy at law. A plaintiff has no adequate remedy at law when the defendant's infringing conduct is likely to

continue without an injunction. *See Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1262 (S.D. Fla. 2016) ("Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Seller IDs because Plaintiff cannot control the quality of what appears to be its products in the marketplace."); *CommScope, Inc.*, 809 F. Supp. 2d at 41-42 (finding no adequate remedy at law where the defendant would continue to use a name that was confusingly similar to a protected trademark absent an injunction). AXXA has not appeared in this case nor has it indicated any intent to cease using the infringing marks or names. Its change of one letter in its mark is insufficient to prevent harm to Ampion. *See, e.g.*, *North Am. Graphics, Inc.*, 1997 WL 316599, at *6. Accepting the complaint's allegations as true, this Court finds that Ampion has no adequate remedy at law.

Ampion has alleged that the defendant's acts are causing "irreparable harm to the valuable Ampion Marks and to its business, goodwill, reputation, and profits" and that "unless [d]efendant is restrained from further infringement of the Ampion Marks, Ampion will continue to be irreparably harmed." Docket Item 1 at 8. Because Ampion has shown irreparable harm and the absence of any adequate remedy at law, it meets the prerequisites for a permanent injunction.

### 2. Attorney's Fees and Costs

Ampion also seeks an award of attorney's fees and costs. *Id.* at 13. 15 U.S.C. § 1117 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."[4] An exceptional case is one with "evidence of fraud or bad

---

[4] In the complaint, Ampion requests a determination that the case is "exceptional" in accordance with 15 U.S.C. § 1117(a). Docket Item 1 at 11.

faith." *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 166 F.3d 438, 439 (2d Cir. 1999) (quoting *Twin Peaks Prods., Inc. v. Publ'ns Int'l Ltd.*, 996 F.2d 1366, 1383 (2d Cir. 1993)). But when a plaintiff pleads the necessary facts for willful infringement and the defendant defaults, the "defendant's violations are deemed willful and thus constitute exceptional circumstances." *Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC.*, 553 F. Supp. 2d 201, 208 (E.D.N.Y. 2008) (awarding attorney's fees to trademark plaintiff).

Here, Ampion alleges that the AXXA's acts were "deliberate, willful and wanton," thus "making this an exceptional case." Docket Item 1 at 8. Ampion also has provided the Court with letters showing that AXXA indeed knew about the infringement. *Id.* at 9; *see Kepner-Tregone, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999) ("The standard for willfulness is 'whether the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility.'") (quoting *Twin Peaks Prods.,* 996 F.2d at 1382). Because Ampion has pleaded facts showing AXXA's willful infringement, and because AXXA has defaulted, Ampion may recover attorney's fees.

The burden is on the party seeking to recover attorney's fees "to show the requested fees are reasonable." *Prot. One Alarm Monitoring, Inc.*, 553 F. Supp. 2d at 208. To calculate a "reasonable fee," the court looks to the "reasonable hourly rate by reference to fees in the community in which the action is pending, and to the skill and experience of the attorneys who worked on the matter." *Id.* Additionally, "[i]n the Second Circuit, applications for attorney's fees must be supported by contemporaneous time records specifying relevant dates, time spent, and work done." *Prot. One Alarm*

*Monitoring, Inc.*, 553 F. Supp. 2d at 208 n.1 (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

Ampion calculates $15,265.00 in attorney's fees and $572.68 in costs for a total of $15,837.68, Docket Item 9-3 at 3, and it has submitted the required contemporaneous records specifying the dates and times of the services and the services rendered. Docket Item 9-3. Ampion also provided the Court with a statement of the experience and hourly rates of the attorneys who worked on this matter. *Id.* at 2-3. The billing rates of the attorneys—$250 to $350 an hour—are consistent with those in the Western New York market. The hours spent are consistent with the necessary work performed. The requested fees and costs are reasonable and appropriate.

### 3. Damages

Ampion also seeks an award of "damages arising out of defendant's acts"—trebled[5]—along with interest pursuant to 15 U.S.C. § 1117. Docket Item 1 at 13.

15 U.S.C. § 1117 entitles a plaintiff who has established "a violation of any right of the registrant of a mark . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." In the Second Circuit, "a finding of defendant's willful deceptiveness is a prerequisite for awarding profits" under the Lanham Act. *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992); *see also Pedinol Pharmacal, Inc. v. Rising Pharm., Inc.*, 570 F. Supp. 2d 498, 502 (E.D.N.Y. 2008) (discussing "[t]he continuing viability of the wilfulness requirement set forth in *Basch*"). But "many courts in [the Second Circuit] treat a default as evidence

---

[5] In the alternative, Ampion requests wrongful profits trebled or statutory damages under 15 U.S.C. § 1117(c). Docket Item 1 at 13.

of willfulness." *Sream, Inc. v. Khan Gift Shop, Inc.*, 2016 WL 1130610, at *5 (S.D.N.Y. Feb. 23, 2016) (quoting *Rolls-Royce PLC*, 688 F. Supp. 2d at 157). This Court does that here.

Before granting a default judgment for a specific amount of damages, the court should take steps, including by hearing or referral if necessary, to find the appropriate amount to award with reasonable certainty. *See Transatlantic Marine Claims Agency, Inc.*, 109 F.3d at 111. In fact, 15 U.S.C. § 1117 provides that "[t]he court shall assess such profits and damages or cause the same to be assessed under its direction." *See also id*. "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012).

This Court has no information upon which to base an award of damages and therefore cannot determine the damage award to include in a judgment. The Court therefore refers the case to United States Magistrate Judge Hugh B. Scott to issue a report and recommendation to this Court on the amount of damages, and Ampion is invited to present proof to Judge Scott on the damage that it has suffered. In that regard, AXXA is ordered to account for all profits derived from actions that infringed the Ampion Marks and to render an accounting before Judge Scott.[6]

---

[6] Ampion also requested an order permitting it to audit the defendant's books to determine the "scope of the Defendant's past use of Ampion's intellectual property…as well as the Defendant's compliance with the orders of this Court." Because AXXA has not yet appeared, the Court grants only the request for an accounting as part of its referral to Judge Scott. Judge Scott's report and recommendation may address other relief, including the plaintiff's request for an audit.

14

## **CONCLUSION**

In light of the above, it is hereby

ORDERED that that the defendant, AXXA, and its officers, agents, servants, employees, attorneys, parents, successors, assigns, affiliates, and all others acting in concert or participating with them, be and hereby are permanently enjoined and restrained from further acts infringing upon Ampion's unregistered trademark and United States Trademark Registration No. 4096054 and shall not use names or marks confusingly similar thereto or otherwise infringing upon the Ampion Marks; and it is further

ORDERED that the defendant shall file with Judge Scott and serve upon Ampion, within thirty (30) days after the entry of this injunction, a report, in writing and under oath, setting forth in detail the manner and form by which it has complied with the terms of this Court's injunction; and it is further

ORDERED that the defendant shall deliver to Ampion for destruction all products, and all promotional and/or advertising materials of any kind, bearing on the infringing marks and any other marks that are confusingly similar to or otherwise violate the Ampion Marks; and it is further

ORDERED that the defendant shall render an accounting to Judge Scott, pursuant to 15 U.S.C. § 1117, of all profits derived from sales of any kind made as a result of their infringing actions; and it is further

ORDERED that Ampion shall prove any damages claimed in connection with this matter in a hearing before Judge Scott; and it is further

ORDERED upon the termination of this matter, that the Court shall issue judgment in favor of the plaintiff and against the defendant for $15,837.68 in attorney's fees and costs.

SO ORDERED.

Dated: May 15, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE